LOUISA VAN RHEENEN, Appellee, v. E. S. WINDELL et al., Appellants.

No. 42942.

JULY 17, 1935.

Irving C. Johnson, for appellants.

Robert F. Bennett and Harold J. Fleck, for appellee.

DONEGAN, J.—Some time prior to the commencement of the action here involved, the defendant E. S. Windell had secured a decree in an action which was originally brought against William Van Rheenen and Louisa Van Rheenen. During the pendency of that action William Van Rheenen died and the administrator of his estate.was substituted as a party defendant. The decree in that case gave the plaintiff E. S. Windell a judgment against Louisa Van Rheenen and the administrator of her deceased husband's estate for the sum of $1,158.48. The mortgage foreclosed covered certain chattels owned by the deceased husband of Louisa Van Rheenen in partnership with one J. E. Seary. It also covered a portion of two lots referred to as business property, in which the said William Van Rheenen owned an undivided interest, and a residence property in the town of Sharon, Iowa, to which he held the title in fee. The decree provided that a special execution should issue against an undivided one-half of the personal property remaining after the payment of partnership debts; that if the judgment be not satisfied by the sale of the personal property, a second special execution issue against an undivided one-half of the two lots known as business property; and that if the judgment was not satisfied by the sale of these

premises, a third special execution issue against what was known as the residence property. It appears that no personal property remained after the payment of the partnership debts, and, on the 3d day of July, 1934, a special execution was issued and levied against an undivided one-half of the two business lots and notice given for the sale thereof on the 4th day of August, 1934, at two o'clock p. m. The return made by the sheriff upon said special execution, after reciting preliminary matters, stated:

"And in pursuance of said several notices, on the 4th day of August, A. D. 1934, at 2 o'clock p. m. of the same day at the door of the courthouse, in Oskaloosa, in said county, I exposed to sale by public outcry, the aforesaid premises, to the highest bidder therefor; and E. S. Windell then and there bid for the before-mentioned premises, as follows, to-wit:

"E. S. Windell bid in the sum of $1,364.40.

"On the 7th day of September, 1934, I demanded payment of costs of plaintiff's attorney. On the 10th day of September, 1934, he refused to pay costs except those accrued by virtue of sale, less attorney's fees.

"I, C. Johnson paid J. F. Hook, Sheriff, costs in the amount of $14.18.

"J. F. Hook, Sheriff, paid F. W. Wright, Clerk, $14.18.

"In compliance with section 11733, 1931 Code of Iowa, this return is made.

"J. F. Hook,
"Sheriff of Mahaska County, Iowa."

After such return of the first execution, E. S. Windell caused a second special execution to issue for the sale of the same property and, on the 27th day of September, 1934, the present action in equity was instituted in the name of Louisa Van Rheenen, appellee, by Robert F. Bennett and Harold J. Fleck, as guardians ad litem. The petition alleged in substance that at the sale under the first execution the defendant E. S. Windell bid $1,364.40 for the said premises, that the said premises were sold to said E. S. Windell for said sum, that said sum was sufficient to satisfy the judgment and costs assessed against Louisa Van Rheenen, that said E. S. Windell had not satisfied and that he refuses to satisfy such judgment or costs of record, that he had caused a second special execution to issue and levy to be made upon the same premises, and asked that the defend-

ant Hook, as sheriff, be restrained from levying or selling the said premises under the second execution, that the defendant Windell be ordered to satisfy the judgment and costs of record, and that the sale of said premises under the first execution be confirmed. The defendants answered, admitting the decree and judgment in the prior action, the issuance of the special execution, that the sheriff levied upon and advertised the property for sale, that E. S. Windell offered to buy said premises at said execution sale for the full amount of the judgment with interest and costs, and that the judgment in the prior case had not been satisfied. Defendants further alleged that the bid made by E. S. Windell was made under the mistaken and erroneous notion that the said execution sale embraced all the real estate, including the residence property; that he learned of said mistake shortly after said offer had been made; that he immediately informed the defendant, J. F. Hook, sheriff of Mahaska county, of the mistake and told him that, owing to said mistake, he would not make good his offer and requested him to cancel said offer and treat said sale as a nullity; that the defendant J. F. Hook, sheriff, in the exercise of his discretion as such sheriff, treated said sale as a nullity and made a return of the execution under section 11733 of the Code, and collected from the defendant E. S. Windell the actual costs of sale as distinguished from the costs indorsed on the execution; and that at the time said mistake was discovered it was too late for the sheriff to sell the premises under the execution then held by him, and the said sheriff made a return of the old execution so that a new execution could be issued.

Upon the trial of the case the district court found for the plaintiff and ordered that the sheriff be restrained from proceeding under the second execution, that the defendant E. S. Windell satisfy the judgment and costs in the cause of E. S. Windell v. William Van Rheenen, et al., that the sale under the first execution be confirmed, and that the costs of this action be assessed to the defendants. From this decree and judgment the defendants appeal.

We are confronted with the question whether, under the circumstances attending the bid made by the defendant Windell, and the return of the sheriff under the first execution, there was a binding sale of the property to Windell. Section 11733 is as follows:

"When the purchaser fails to pay the money when demanded, the judgment holder or his attorney may elect to proceed against him for the amount; otherwise the sheriff shall treat the sale as a nullity, and may sell the property on the same day, or after postponement as above authorized."

Appellants contend that the sheriff, on being told by Windell of his mistake in making the bid and that he would not take the property, consented to the withdrawal of the bid, held the sale to be a nullity, and properly made the return shown upon the execution. Appellee, however, contends that the sheriff did not have any authority to consent to a withdrawal of the bid made by Windell, and that this bid could not be withdrawn without the consent of the judgment debtor. In support of this contention the appellee cites Downard v. Crenshaw, 49 Iowa 296. In that case the return stated that the sheriff sold the property to Crenshaw, who was the execution creditor, and contained the further statement that the bidder, later on the day of the sale, withdrew his bid. The return contained no further statement, and there was no other evidence, as to the facts attending the sale. The trial court held that there was no sale and this court reversed. In referring to section 3089 of the Code, which corresponds to section 11733 of the present Code, we said:

"This section excludes the thought that the sheriff, on his own motion, can either repudiate or confirm the sale in such case. In the case at bar the plaintiff in execution is the purchaser, and no money except costs was to be paid, and it would seem that in such case the execution debtor, and not the sheriff, should have the right to elect whether the sale should be regarded as abrogated or not. * * *

"If the sheriff had the power to agree that the sale should be abandoned, he has not done so. At most, he is passive. Something more than this is required before a contract can be regarded as rescinded. It is quite evident the sheriff did not assume the responsibility of determining the question and thus incurring liability, but stated the facts, and left it to the law to decide."

Appellee also cites Holtzinger v. Edwards, 51 Iowa 383, 1 N. W. 600, and Harpham v. Worthington, 100 Iowa 313, 69 N. W. 535. The Holtzinger case merely goes to the extent of hold-

ing that, where the judgment debtor is the owner of the legal title to property sold under execution, the purchaser buys at his peril. So far as we can find, there is nothing in that case which is applicable to the precise question which we now have under consideration. In the Harpham case, the facts were that the defendant, Worthington, had obtained a judgment against Harpham upon which execution had been issued. The return on this execution showed that certain lands were levied upon and sold to Worthington, the execution creditor. There was no evidence as to what, if anything, further was done under this execution. Some 16 years later, Worthington caused another general execution to issue on the same judgment and under it 40 acres of land was sold and bid in by Worthington. Harpham contended that the first sale was a satisfaction of the judgment and asked that the second sale be canceled, and the trial court so held. This court, in affirming the judgment of the trial court, held that, as the amount of the first sale was sufficient to satisfy the judgment, it would be presumed that such sale was completed and the judgment satisfied. It will be noted that in both the Downard case and the Harpham case the return made on the first execution stated that the land had been sold to the execution creditor, and that there was no evidence in addition to the facts shown on the return. In this respect the return made in each of these cases differs from the return made in this case, and this difference will hereafter be referred to.

The appellants meet the appellee's argument and cases cited by him by citing the case of State Bank v. Brown, 128 Iowa 665, 105 N. W. 49. This is the latest case which has been called to our attention, and the opinion refers to all of our previous cases involving the proposition under discussion. In that case the execution creditor, through his attorney, had bid in the property at execution sale. On the following day, the attorney discovered that he had made a miscalculation and had made a bid for a greater amount than he had been authorized to make. He informed the sheriff of his mistake and asked the sheriff to declare the sale a nullity and resell the property. The sheriff did so and the property was again put up and sold for much less than the original bid. One Cooper, who had purchased the land involved from the defendant, Brown, subject to the mortgage foreclosed, attempted to hold the plaintiff to the first bid. The trial court sustained the second bid, and on appeal, this court affirmed the

case. After quoting the statutory provision, which was the same as section 11733, the opinion says:

"Under this statute it is quite clear we think that no one but the judgment holder or his attorney, which practically means the same thing, may proceed against a bidder at execution sale, who fails to pay the amount of his bid, when demanded. If neither of these persons do so, then it is the duty of the sheriff to resell the property. This is a wise provision, for the judgment creditor should not be held liable for the results of a lawsuit which he does not authorize or care to undertake. Moreover, the sheriff should not be required to employ counsel to enforce any bid which may be made and afterwards withdrawn. Again, he should not be made liable for a mistake in judgment as to the responsibility of bidders. Wisely, we think, this matter was left with the holder of the judgment.

"But, if wrong in this, the sheriff undoubtedly has some discretion in the matter. For reasons which appear good and satisfactory to him, he may refuse a bid, or, having accepted it, he may before the transaction is closed repudiate the same or authorize its withdrawal and resell the property. [Citing cases.]

"Appellant's counsel seem to think that the case is ruled by Downard v. Crenshaw, 49 Iowa [296], 299. But a reading of that decision will show that it is distinguishable. In that case the officer did nothing, except to make a return of the facts into court. He did not consent to the withdrawal of the bid, nor did he resell the property. Under such a record we held that a second execution and sale was unauthorized and invalid. This distinction is pointed out in the Reese case, supra [Reese v. Dobbins, 51 Iowa 282, 1 N. W. 540], and also in the Harpham case. Some language used in the opinion in the Downard case seems to support appellant's contention; but it is pure dictum, and was in no way essential to the conclusion reached. * * *

"The sheriff was an agent for the defendant Cooper, as well as for the other parties, and he in virtue of statutory authority treated the bid and sale as a nullity, and so reported to the court. As he could not have enforced the bid, neither may the defendant Cooper. A number of respectable authorities hold that in no event may an execution defendant bring action to enforce a bid at sheriff's sale. [Citing cases.] A few of the cases, holding to the affirmative are in states having the reformed

procedure, while some of them are not. We need not at this time decide which is the proper rule for this state, as the sheriff under our statute had the undoubted right under the showing here made to treat the first bid as a nullity and to resell the property. When he did this, there was no other bid to enforce.''

See, also, Fuson v. Connecticut General Life Insurance Co., 53 Iowa 609, 6 N. W. 7, wherein an execution creditor was allowed to withdraw the bid made by his agent under a mistake as to his authority and the property was resold.

In both State Bank v. Brown, and Fuson v. Insurance Company, the bid made at the first sale was by the execution creditor. In both of these cases the sheriff allowed the bid to be withdrawn, and the ground for withdrawing the bid was mistake on the part of the bidder. The mistake in each case was made by the attorney or agent of the execution creditor, but we can see no reason why a mistake of the execution creditor himself, if it be an honest mistake and not a subterfuge, should not have the same effect as if made by another acting in his behalf. These cases clearly establish the proposition that the sheriff has some discretion, and that he can allow a bid to be withdrawn and treat the sale as a nullity, without the consent of the judgment debtor. In neither the Downard case nor the Harpham case, cited by appellee, was there any evidence to show that the bid was made because of a mistake. In both of these cases the return stated that the land had been sold to the execution creditor, and in neither of them was there any evidence to show that the sheriff had consented to a withdrawal of the bid and to treat the sale as a nullity. In the case before us, however, we think the evidence clearly establishes that the bid made at the first sale was made under a mistake of fact as to the property included in the sale; that the execution creditor, upon discovering his mistake, promptly refused to carry out his offer and withdrew his bid; and that the sheriff consented to such withdrawal and did treat the sale as a nullity.

Appellee contends that it is not only unfair to her, but establishes a dangerous precedent to allow the appellant to withdraw his bid merely because he concludes that he bid too much for the property. We do not think the facts of this case warrant the conclusion that the bid was withdrawn merely because Windell concluded that he had bid too much. There is nothing

in the evidence that causes us to believe that appellant's withdrawal of his bid was made for any other reason than that he had made a serious mistake as to the property included in the execution. There is nothing in the circumstances attending the sale and withdrawal of the bid, the return of the first execution, or the issuance of the new execution, that appears in any way to have misled appellee or to furnish a basis for estoppel, and no estoppel is pleaded. Appellee alleges that if Windell be not compelled to satisfy the judgment and costs she will suffer irreparable injury, but, so far as we can see, the only injury she will suffer will be that she will not have the judgment against her satisfied by compelling the owner of the judgment to accept property of the value of about one-half of the amount of the judgment in full payment thereof. This is an action in equity, and we are unable to see on what equitable ground the appellee is entitled to the relief which she seeks.

The decree of the trial court is reversed.—Reversed.

KINTZINGER, C. J., and all Justices concur.